NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATTEBURY GRAIN, LLC, | ) CASE NO. CV 17-2407-R |
| Plaintiff, | ) ORDER GRANTING PLAINTIFF'S |
| | ) MOTION FOR PARTIAL SUMMARY |
| v. | ) JUDGMENT |
| VAC PROPERTIES, LLC, et al., | ) |
| Defendants. | ) |

Before the Court is Plaintiff Attebury Grain's Motion for Partial Summary Judgment. (Dkt. No. 30). Having been briefed by both parties, this Court took the matter under submission on October 11, 2017.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). To meet its burden of production, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party meets its initial burden of showing there is no genuine issue of material fact, the opposing party has the burden of producing competent evidence and cannot rely

1   on mere allegations or denials in the pleadings. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*
2   *Corp.*, 475 U.S. 574, 586 (1986). Where the record taken as a whole could not lead a rational trier
3   of fact to find for the nonmoving party, there is no genuine issue for trial. *Id*. The nonmoving
4   party cannot create a genuine issue of material fact by contradicting prior sworn testimony merely
5   for the purpose of avoiding summary judgment. *Hambleton Bros. Lumber Co. v. Balkin Enters.,*
6   *Inc.*, 397 F.3d 1217, 1225 (9th Cir. 2005).

7   This case arises from a 2011 dispute over a corn processor's failure to pay its supplier for
8   inventory. Superior Grain Company is a corn processor founded by Defendant Vicente Cortez
9   ("Cortez") and privately held within his family. In 2011, Plaintiff supplied Superior with corn, but
10  Superior did not pay for it. Plaintiff prevailed in arbitration against Superior, and on October 1,
11  2013, Plaintiff registered its arbitration award in the Central District of California and began
12  collection efforts. In the meantime, however, Superior had ceased business operations, and
13  Vicente Cortez had formed a new company, Grayn, which carried on Superior's business.
14  Superior then filed for bankruptcy. On July 13, 2015, in an attempt to reach Superior's assets,
15  Plaintiff filed a lawsuit before this Court alleging claims for fraudulent transfer and constructive
16  fraudulent transfer under California's Uniform Voidable Transactions Act ("UVTA"), Cal. Civil
17  Code § 3439 *et seq.*, alter ego liability, and unjust enrichment (the "2015 Action"). At a hearing
18  on April 18, 2016, this Court granted Plaintiff's Motion for Summary Judgment as to all claims in
19  the 2015 Action. On May 3, 2016, this Court entered judgment against Cortez for $1,010,343.05.

20  The instant litigation arises from the alleged fraudulent transfers that Defendants made
21  following the April 18, 2016 hearing. Plaintiff seeks summary judgment on its claims for (1)
22  Avoidance of Intentional Fraudulent Transfer (California Civil Code §§ 3439.04, 3439.07,
23  3439.09), and (2) Avoidance of Constructive Fraudulent Transfer (California Civil Code
24  §§ 3439.04, 3439.95, 3439.07, 3439.09).

25  Courts may take judicial notice of facts that are "capable of accurate and ready
26  determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R.
27  Evid. 201(b)(2). Accordingly, this Court takes judicial notice of the civil docket and docket
28  numbers 1, 63, 66, and 67 in the 2015 Action, *Attebury Grain, LLC v. Grayn Company*, No. 2:15-

1  cv-05258 R(PJWx), docket number 141 in the bankruptcy action, *In re Grayn Company*, No. 2:16-
2  bk-19478-DS, and the dockets in the Ninth Circuit cases *Attebury Grain, LLC v. Vicente Cortez*,
3  No. 16-55729 and *Attebury Grain LLC v. Grayn Company*, No. 16-55746.

4        Plaintiff alleges the following facts.  On April 19, 2016, the day after this Court granted
5  Plaintiff's motion for summary judgment, Cortez transferred $69,333.06 from his savings account
6  into his checking account.  The resulting balance of the savings account was $1,000.00, and the
7  balance of the checking account was $451,582.56.  Later that day, Cortez wrote two checks
8  totaling $451,492.49.  The remaining balance of the checking account then was $90.07.  One
9  check was a cashier's check for $200,000.00, which was a payment to his son, Defendant Juan
10 Cortez ("Juan").  However, Defendant Juana Cortez ("Juana") testified that Cortez did not owe his
11 son any debt, and she did not know why her husband paid him $200,000.00.  The second check
12 was a payment to Bank of the West for $251,492.49, paying off a credit line secured by a home in
13 Los Angeles owned by Cortez and Juana (the "Gratian Street Property").  Cortez and Juana
14 purchased this house in January 2016 using the Bank of the West credit line and the couple held
15 the property in their name.  On May 3, 2016, this Court entered a judgment against Cortez in the
16 amount of $1,010,343.05 (the "2016 Judgment").  On May 6, 2016, Cortez formed Defendant
17 VAC Properties, LLC ("VAC"), of which Cortez is the sole managing member.  On May 20,
18 2016, Cortez and Juana transferred the Gratian Street Property to VAC.

19 **Intentional Fraudulent Transfer**

20       Under the California UVTA, asset transfers by a debtor are voidable if the transfer was
21 made "with actual intent to hinder, delay, or defraud any creditor of the debtor."  Cal. Civ. Code
22 § 3439.04(a)(1).  Courts may consider several factors to determine intent, but no single factor is
23 dispositive.  *See Filip v. Bucurenciu*, 28 Cal. Rptr. 3d 884, 890 (Cal. App. 2005).  The factors
24 include whether: (1) the transfer or obligation was to an insider; (2) the debtor retained possession
25 or control over the property after the transfer; (3) the transfer was disclosed or concealed; (4) the
26 transfer was made after the debtor had been sued or threatened with suit; (5) the transfer was of
27 substantially all of the debtor's assets; (6) the debtor absconded; (7) the debtor removed or
28 concealed assets; (8) the consideration that the debtor received was reasonably equivalent to the

1 value of the asset; (9) the debtor was insolvent or became insolvent shortly after the transfer was
2 made; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred;
3 (11) the debtor transferred the essential assets of the business to a lienor that transferred the assets
4 to an insider of the debtor. Cal. Civ. Code § 3439.04(b). After considering these factors, the
5 Court finds that the 2016 Transfers are intentional fraudulent transfers under the UVTA.

6 First, Plaintiff's evidence shows that the purpose of transferring ownership of the Gratian
7 Street Property was to prevent Plaintiff from collecting the 2016 Judgment. In fact, Juana testified
8 that she and her husband paid off the credit line and transferred the Gratian Street Property to
9 VAC in order to shield it from judgment in the 2015 Action. Cortez also testified that the transfer
10 was prompted by Juana's concerns that Plaintiff would acquire the property unless it was
11 transferred.

12 Defendants attempt to dispute these facts. Defendants rely on a number of "corrections" to
13 Juana's deposition testimony and two recently sworn declarations from Juana and Cortez to show
14 a genuine dispute. While Defendants may make corrections to a deposition transcript, the Federal
15 Rules of Civil Procedure do not allow "changes offered solely to create a material factual dispute
16 in a tactical attempt to evade an unfavorable summary judgment." *Hambleton*, 397 F.3d 1217.
17 Here, Defendants' rewrite Juana Cortez's testimony without explanation. These corrections are
18 not corrections at all, but "purposeful rewrites tailored to manufacture an issue of material fact."
19 *Hambleton*, 397 F.3d 1217. Therefore, the "corrected" transcript does not show a genuine dispute.
20 Additionally, "sham" declarations generated solely for the purpose of evading summary judgment
21 do not create a genuine dispute of fact. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th
22 Cir. 1991). Here, Defendants offer recently sworn declarations that contradict Juana and Cortez's
23 prior sworn testimony. "[A]n inconsistent [declaration] may preclude summary judgment if the
24 [declarant] was confused at the deposition and the [declaration] explains those aspects of the
25 deposition testimony or if the [declarant] lacked access to material facts and the [declaration] sets
26 forth the newly-discovered evidence." *Id.* Defendants do not claim that Cortez or Juana was
27 confused at the deposition, lacked access to material facts, or made some other mistake in their
28 deposition testimony; in fact, they offer no explanation for the contradictory testimony. The Court

4

1  finds that Defendants' new declarations are sham declarations and merely tactical moves to avoid
2  summary judgment.  Therefore, there is no genuine dispute of fact regarding the purpose of the
3  transfer.
4        Plaintiff's evidence also shows that the $200,000.00 transfer to Juan was intended to
5  hinder, delay, and defraud Plaintiff's collection efforts.  Juana testified at her deposition that, to
6  her knowledge, Cortez did not owe Juan a debt, and she did not know why he would transfer that
7  money to his son.  Defendants did not object to this testimony at the deposition.  Defendants now
8  object to Juana's testimony on the basis that she lacked personal knowledge.  However, this
9  objection has already been waived because it was not timely made during the deposition.  *See* Fed.
10 R. Civ. P. 32(d)(3)(B).  Defendants also dispute that Cortez did not owe Juan a debt, and they
11 again rely on Cortez and Juana's recent declarations to show that Cortez did, in fact, owe Juan
12 money.  As discussed, these declarations are sham declarations; they contradict prior sworn
13 testimony, and they do not offer any explanation for the inconsistencies.  Therefore, they do not
14 create a genuine dispute of fact.
15       The UVTA factors for intentional fraudulent transfer are satisfied.  The 2016 Transfers
16 were both insider transfers.  Cortez's transfer of $251,492.49 to pay off a Bank of the West credit
17 line on the Gratian Street Property was an insider transfer.  He transmuted the cash, which was his
18 own property, into equity in the home, which was community property.  Then, the marital
19 community transferred the property to VAC, of which Cortez is the sole managing member.
20 Because these transfers were between Cortez, the marital community, and an entity that he
21 controls, they constitute transfer to insiders.  The $200,000.00 transfer to Juan is also an insider
22 transfer because he is a member of Cortez's immediate family.
23       Defendants also retained control over the property they transferred.  After Cortez and
24 Juana transferred the Gratian Street Property to VAC, the couple executed a Short Form Deed of
25 Trust and Assignment of Rents, designating themselves as beneficiaries.  Moreover, Juana
26 testified at her deposition that she receives monthly rent of $1,500.00 from the family renting the
27 property.  Defendants retained control over the $200,000.00 transferred to Juan as well.  The
28 funds originated from Cortez's personal bank account, and Juan is still in possession of the sum

certain amount.

Other factors under the UVTA are satisfied as well. The 2016 Transfers were made immediately following the Court's grant of summary judgment, and they were of substantially all assets. Neither the cash transfer nor the transfer of the Gratian Street Property was disclosed to Plaintiff. After the 2016 Transfers, Cortez had no known assets apart from his residence, $1,000.00 in his savings account, and $90.07 in his checking account. There was no "reasonably equivalent" value given in exchange for the transfers from Cortez's bank accounts. Cortez was also insolvent at the time of the 2016 Transfers. *See* Cal. Civ. Code § 3439.02(b). Finally, the assets were plainly removed, and there is no genuine dispute that Cortez purposely acted to remove and conceal his money and property from Plaintiff's collection efforts. Cortez and Juana both testified as much, and Defendants' declarations do not create a genuine dispute of fact. Therefore, Plaintiff is entitled to summary judgment on its First Claim for Relief.

**Constructive Fraudulent Transfer**

"Even without actual fraudulent intent, a transfer may be fraudulent as to present creditors if the debtor did not receive a 'reasonably equivalent value in exchange for the transfer' and the 'debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.'" *Mejia v. Reed*, 74 P.3d 166, 170 (Cal. 2003) (quoting Cal. Civ. Code § 3439.05).

Here, Plaintiff's claims against Cortez arose prior to the 2016 Transfers. Cortez also became insolvent as a result of the 2016 Transfers, if he was not insolvent already. Under the UVTA, a debtor is insolvent if "the sum of the debtor's debts is greater than the sum of the debtor's assets." Cal. Civ. Code § 3439.02(a). After the 2016 Transfers, Cortez had a balance of $1,000.00 in his savings account, $90.07 in his checking account, and his remaining substantial asset was his residence. The 2016 Judgment against Cortez exceeds the value of that asset. Therefore, Cortez is legally insolvent. Moreover, Cortez is presumed insolvent regardless because of his failure to pay his debt to Plaintiff as it became due. *Id.* at § 3439.02(b). Finally, Cortez did not receive reasonably equivalent value in exchange for the transfers. The Gratian Street Property was purchased for over $300,000.00 in January 2016, and only four months later, it was transferred to VAC in exchange for $100,000.00. Additionally, Defendants do not genuinely

6

1  dispute that the $200,000.00 cashier's check given to Juan was not exchanged for reasonably
2  equivalent value.  Therefore, Plaintiff is entitled to summary judgment on its Second Claim for
3  Relief.
4      **IT IS HEREBY ORDERED** that Plaintiff's Motion for Partial Summary Judgment is
5  GRANTED. (Dkt. No. 30).
6  Dated: November 9, 2017

                                                MANUEL L. REAL
                                         UNITED STATES DISTRICT JUDGE