1  JOSEPH N. AKROTIRIANAKIS (State Bar No. 197971)
   jakro@kslaw.com
2  KING & SPALDING LLP
   633 West Fifth Street – Suite 1700
3  Los Angeles, CA 90071
   Telephone:  +1 213 443 4355
4  Facsimile:   +1 213 443 4310

5  ANTHONY P. NICCOLI (State Bar No. 219118)
   aniccoli@aalrr.com
6  ATKINSON, ANDELSON, LOYA, RUUD & ROMO, APLC
   12800 Center Court Drive South – Suite 300
7  Cerritos, CA 90703
   Telephone:  +1 562 653 3200
8  Facsimile:   +1 562 653 3333

9   Attorneys for Plaintiff ATTEBURY GRAIN, LLC

10

11

12              **UNITED STATES DISTRICT COURT**

13              **CENTRAL DISTRICT OF CALIFORNIA**

14          **WESTERN DIVISION – ROYBAL COURTHOUSE**

15

| | |
|---|---|
| 16  ATTEBURY GRAIN, LLC, a limited liability company, | Case No. 2:17-cv-02407 R (PJWx) |
| 17 | *Assigned to the Hon. Manuel L. Real* |
| 18          Plaintiff, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| 19          v. | Trial Date:   Vacated |
| 20  VAC PROPERTIES, LLC, a limited liability company; VICENTE A. CORTEZ, TRUSTEE OF THE VICENTE CORTEZ SEPARATE PROPERTY TRUST; VICENTE CORTEZ, an individual; and JUANA CORTEZ, an individual; and JUAN CORTEZ, an individual, | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25          Defendants. | |

26

27

28

## BACKGROUND

1. On March 28, 2017, Plaintiff Attebury Grain, LLC ("Plaintiff" or "Attebury") filed its Complaint in this action alleging four claims for relief under California's Uniform Voidable Transactions Act ("UVTA"), Cal. Civil Code § 3439 *et seq.*, against Defendants VAC Properties, LLC ("VAC"); Vicente A. Cortez, as Trustee of the Vicente Cortez Separate Property Trust ("Trust"); Vicente Cortez; Juana Cortez; and Juan Cortez (Dkt. No. 1).

2. No jury trial was demanded in the Complaint, and no party has at any time demanded a trial by jury.

3. On July 3, 2017, the Court set a trial date of November 28, 2017 and pretrial conference of November 6, 2017 (Dkt. No. 28).

4. On September 18, 2017, Plaintiff made a Motion for Partial Summary Judgment, or in the Alternative, for an Order Treating Specified Facts as Established ("Motion," Dkt. No. 30). By the Motion, Plaintiff sought summary judgment on the First and Second Claims for Relief.

5. On October 11, 2017, this Court issued an order taking the Motion under submission (Dkt. No. 45).

6. On November 1, 2017, the Court continued the pretrial conference from November 6, 2017, to November 16, 2017, and directed the parties to lodge the pretrial conference order on or before November 13, 2017 (Dkt. No. 55).

7. On November 13, 2017, the Court, having considered all memoranda of points and authorities and all evidence presented in support of, and opposition to, the Motion, granted the Motion and issued a written order (Dkt. No. 58).

8. On November 13, 2017, the parties lodged an Amended Pretrial Conference Order (Dkt. No. 59). As set forth in the parties' amended Pretrial Conference Order, Plaintiff seeks the following remedies:

      a.    A judgment in the amount of the value of each asset

fraudulently transferred at the time of the transfer, Cal. Civ. Code § 3439.08

   b.   Prejudgment interest.  Cal. Civ. Code §§ 3287, 3289.

   c.   Exemplary damages.  Cal. Civ. Code § 3294.

   d.   Avoidance of the transfers to the extent necessary to satisfy the creditor's claim.  Cal. Civ. Code § 3439.07(a)(1).

   e.   An attachment or other provisional remedy against the asset transferred or other property of the transferee.  Cal. Civ. Code § 3439.07(a)(2).

   f.   An injunction against further disposition by the debtor and the transferee of the asset transferred or other property of the transferee.  Cal. Civ. Code § 3439.07(a)(3)(A).

   g.   Appointment of a receiver to take charge of the asset transferred or other property of the transferee.  Cal. Civ. Code § 3439.07(a)(3)(B).

   h.   Any other relief the circumstances may require.  Cal. Civ. Code § 3439.07(a)(3)(C).

   9.   On November 16, 2017, the Court held a hearing on the date set for the pretrial conference.  Plaintiff indicated that the parties intended to stipulate to the dismissal without prejudice of all claims not the subject of the Motion, and that Plaintiff would request that the Court thereafter enter judgment in this matter. During the hearing, the Court signed the Pretrial Conference Order lodged by the parties (Dkt. No. 59) and directed Plaintiff to submit a Proposed Judgment and any additional Proposed Findings of Fact and Conclusions of Law necessary to support the judgment Plaintiff intended to propose.

ATTEBURY GRAIN, LLC'S FINDINGS OF FACT AND CONCLUSIONS OF LAW; PROPOSED JUDGMENT

## II.

## APPLICABLE LEGAL STANDARDS

The legal standards applicable to a motion for summary adjudication are set forth in the Court's order granting Plaintiff's Motion (Dkt. No. 58). The legal standards applicable to the remedies Plaintiff seeks are discussed in section IV.C, below.

## III.

## FINDINGS OF FACT[1]

This case arises from a 2011 dispute over a corn processor's failure to pay its supplier for inventory. In 2015, Attebury filed an action entitled *Attebury Grain, LLC v. The Grayn Company, et al.*, No. 2:15-cv-05258-R before this Court (the "2015 Action").

The instant litigation arises from the alleged fraudulent transfers that Defendants made following the April 18, 2016 hearing in the 2015 Action. The salient facts related to the fraudulent transfers at issue in this action are uncontroverted.

### A.    Findings of Fact related to Background

1.    Superior Grain Company was a corn processor founded by Defendant Vicente Cortez and privately held within his family.

2.    In 2011, Plaintiff supplied Superior with corn, but Superior did not pay for it.

3.    Plaintiff prevailed in arbitration against Superior.

4.    On October 1, 2013, Plaintiff registered its arbitration award in the Central District of California and began collection efforts.

5.    In the meantime, Superior had ceased business operations, and Vicente Cortez had formed a new company, Grayn, which carried on Superior's

---

[1] If any finding of fact herein is a conclusion of law, or vice versa, it shall be treated as such.

business, while Superior filed for bankruptcy.

6. On July 13, 2015, in an attempt to reach Superior's assets, Plaintiff filed the 2015 Action, alleging claims for fraudulent transfer and constructive fraudulent transfer under California's Uniform Voidable Transactions Act ("UVTA"), Cal. Civil Code § 3439 *et seq.*, alter ego liability, and unjust enrichment (the "2015 Action").

7. In January 2016, Vicente Cortez and Defendant Juana Cortez purchased an investment property located on Gratian Street in the City of Los Angeles, for more than $300,000.00 ("Gratian Street Property").

8. Title to the Gratian Street Property was vested in the names of Vicente Cortez and Juana Cortez, husband and wife as community property.

9. To purchase the Gratian Street Property, Vicente Cortez and Juana Cortez opened a line of credit with the Bank of the West.

**B. Findings of Fact related to First and Second Claims for Relief One**

10. On March 21, 2016, in the 2015 Action, Attebury filed a Motion for Summary Judgment ("Motion") against Vicente Cortez and Grayn.

11. At a hearing on April 18, 2016, this Court granted Plaintiff's Motion for Summary Judgment as to all claims in the 2015 Action.

12. The next day, April 19, 2016, Vicente Cortez made three "In Person" transfers ($1,333.06, $4,000.00, and $55,000.00) from his Bank of the West Classic Savings Account (account no. XXX-XX6522) to his Bank of the West Wealth Management Checking Account (account no. XXXX4159).

13. As a result of the April 19, 2016, transfers from Vicente Cortez's Bank of the West Classic Savings Account (account no. XXX-XX6522) the balance of that account dropped from $61,333.06 to $1,000.00.

14. Vicente Cortez deposited $9,000.00 in cash into his Bank of the West Wealth Management Checking Account (account no. XXXX4159).

15.     After transferring and depositing a total of $69,333.06 ($1,333.06 + $4,000.00 + $55,000.00 + $9,000.00) into his Bank of the West Wealth Management Checking Account (account no. XXXX4159) on April 19, 2017, the balance of that account was $451,582.56.

16.     On April 19, 2016, Vicente Cortez wrote two checks totaling $451,492.49 ($200,000.00 + $251,492.49, collectively "the April 19, 2016 Transfers") against his Bank of the West Wealth Management Checking Account (account no. XXXX4159).

17.     As a result of the April 19, 2016, transfers from Vicente Cortez's Wealth Management Checking Account (account no. XXXX4159) the balance of that account dropped to $90.07.

18.     The two checks totaling $451,492.49 against Vicente Cortez's Bank of the West Wealth Management Checking Account (account no. XXXX4159) were made payable to "Bank of the West Cashier's Ck" ($200,000.00, check no. 1034) and "Bank of the West Payment" ($251,492.49, check no. 1035).

19.     Vicente Cortez transferred the $200,000.00 to his son, Juan Cortez.

20.     Vicente Cortez transferred the $251,492.49 to Bank of the West in payoff of the line of credit used to purchase the Gratian Street Property.

21.     The line of credit paid off with the $251,492.49 was secured by the residence of Vicente and Juana Cortez, located on McDonnell Avenue in Los Angeles, and owned by Vicente and Juana Cortez without encumbrances.

22.     On May 3, 2016, this Court entered judgment against Vicente Cortez for $1,010,343.05.

23.     On May 6, 2016, Vicente Cortez caused the organization of Defendant VAC Properties ("VAC"), a limited liability company of which Vicente Cortez is the sole managing member.

24.     On May 20, 2016, Vicente and Juana Cortez transferred the Gratian Street Property to VAC for $100,000.00—money they had loaned to VAC.

ATTEBURY GRAIN, LLC'S FINDINGS OF FACT AND CONCLUSIONS OF LAW; PROPOSED JUDGMENT

25. On May 20, 2016, the same day of the transfer of the Gratian Street Property to VAC, Juana Cortez and Vicente Cortez executed a Short Form Deed of Trust and Assignment of Rents and designated themselves as the beneficiaries.

26. At a January 19, 2017, Judgment Debtor's Examination, Vicente Cortez testified that the transfer of the Gratian Street Property was prompted by Juana Cortez's concerns that Attebury would acquire the property unless it was transferred.

27. On January 19, 2017, and again on February 28, 2017, Vicente Cortez testified that his own actions with respect to the transfer of the Gratian Street Property were motivated by the same concerns, i.e., that Attebury would acquire the property unless it was transferred.

**C.   Findings of Fact related to Punitive Damages**

28. The purpose of the April 19, 2016 Transfers was to hinder and delay Attebury's collection efforts and to defraud Attebury.

29. The purpose of transferring the Gratian Street Property was to hinder and delay Attebury's collection efforts and to defraud Attebury.

30. Defendant Vicente Cortez Separate Property Trust is a revocable trust, and Vicente Cortez is the trustee.

31. The trust documents for the Vicente Cortez Separate Property Trust provide that "[Vicente Cortez] may revoke the trust in whole or in part, may amend any of its provisions, and may cancel any amendment."

32. During a January 19, 2017, Judgment Debtor Examination, Vicente Cortez testified that the Vicente Cortez Separate Property Trust owns real property located on Whittier Blvd. in Pico Rivera, California, where the La Fortuna Market is located.

33. During a January 19, 2017, Judgment Debtor Examination, Vicente Cortez testified that the Vicente Cortez Separate Property Trust owns real property located on Garvey Avenue in El Monte, California, where La Mano Tortilleria is

located.

34. In addition to the Garvey Avenue Property on which La Mano Tortilleria is located, Vicente Cortez owns the La Mano tortilla factory itself.

35. The Vicente Cortez Separate Property Trust was created April 25, 2013.

36. During a January 19, 2017, Judgment Debtor's Examination, Vicente Cortez testified that he and his wife, Juana Cortez, own three vehicles.

37. During her September 1, 2017, deposition, Juana Cortez testified that she receives the monthly rent of $1,500.00, in cash, from the tenants of the Gratian Street Property.

## IV.

## <u>CONCLUSIONS OF LAW</u>

The plaintiff bears the burden of proving each element of its claims. *See Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003). Attebury has met this burden with respect to the First and Second Claims for Relief.

**A.  Conclusions of Law related to First Claim for Relief**

1. Under the California UVTA, asset transfers by a debtor are voidable if the transfer was made "with actual intent to hinder, delay, or defraud any creditor of the debtor." Cal. Civ. Code § 3439.04(a)(1).

2. Courts may consider several factors to determine intent to hinder, delay, or defraud, but no single factor is dispositive. *See Filip v. Bucurenciu*, 28 Cal. Rptr. 3d 884, 890 (Cal. App. 2005).

3. The factors are set forth in the UVTA, Cal. Civ. Code § 3439.04(b), and include whether: (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control over the property after the transfer; (3) the transfer was disclosed or concealed; (4) the transfer was made after the debtor had been sued or threatened with suit; (5) the transfer was of substantially all of the debtor's

assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the consideration that the debtor received was reasonably equivalent to the value of the asset; (9) the debtor was insolvent or became insolvent shortly after the transfer was made; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; (11) the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor. Cal. Civ. Code § 3439.04(b).

4. After considering the foregoing factors, and for the reasons articulated in its Order Granting Plaintiff's Motion For Partial Summary Judgment (Dkt. No. 58), the Court finds that the 2016 Transfers were intentional fraudulent transfers under the UVTA, and Plaintiff is entitled to judgment under Section 3439.04 on the First Claim for Relief.

5. Juana Cortez and Vicente Cortez testified under oath that they intended to hinder, delay, and defraud Attebury's collection efforts by transferring the Gratian Street Property to VAC, which was the "first transferee" of that asset. Cal. Civ. Code § 3439.08(b)(1)(A).

6. The Court concludes, based on the uncontroverted evidence, that Vicente and Juana Cortez's intent in transferring the Gratian Street Property was to hinder and delay Attebury's collection efforts and to defraud Attebury.

7. The Court likewise concludes, based on the uncontroverted evidence, that Vicente Cortez's intent in making the April 19, 2016, transfers of $451,492.49 from his checking account was to hinder and delay Attebury's collection efforts and to defraud Attebury.

8. Vicente Cortez's April 19, 2016, transfers from his checking account were insider transfers made immediately after the Court granted Attebury's motion for summary judgment.

9. With respect to Vicente Cortez's transfer of $200,000.00 to Juan Cortez, the "first transferee," Cal. Civ. Code § 3439.08(b)(1)(A), is a member of

ATTEBURY GRAIN, LLC'S FINDINGS OF FACT AND CONCLUSIONS OF LAW; PROPOSED JUDGMENT

Vicente Cortez's immediate family. Juana Cortez testified at her deposition that, to her knowledge, Vicente Cortez did not owe his son Juan Cortez a debt, and did not know why he would transfer that money to his son.

10.     With respect to Vicente Cortez's transfer of $251,492.49 to pay off a Bank of the West credit line, Vicente Cortez transmuted the cash (which was his own property) into equity in the home (which was community property). The marital community of Vicente and Juana Cortez was either the "first transferee" of the $251,492.49 or an "immediate or mediate transferee of the first transferee" against which a judgment may be entered. Cal. Civ. Code § 3439.08(b)(1)(A), (B).

**B.     Conclusions of Law related to Second Claim for Relief**

11.     Constructive fraudulent transfers are voidable under California Civil Code sections 3439.05 if (1) the obligation to the creditor arose before the transfer; (2) the debtor did not receive reasonably equivalent value; and (3) the debtor was insolvent at that time or became insolvent as a result of the transfer. Cal. Civ. Code § 3439.05.

12.     For the reasons articulated in its Order Granting Plaintiff's Motion For Partial Summary Judgment (Dkt. No. 58), the Court finds that the 2016 Transfers were constructive fraudulent transfers under the UVTA, and Plaintiff is entitled to judgment under Section 3439.05 on the Second Claim for Relief.

13.     Vicente Cortez's debt to Attebury arose prior to the constructive fraudulent transfers alleged in the Second Claim for Relief.

14.     It is uncontroverted that the transfers of assets from Vicente Cortez to Juan Cortez ($200,000.00) and from Vicente Cortez to the marital community of Vicente Cortez and Juana Cortez ($251,492.49, in the form of additional equity in their residence) did not involve payment of the reasonably equivalent value of the assets.

15.     The Gratian Street Property was purchased for over $300,000.00 in January 2016, and only four months later, it was transferred to VAC in exchange

ATTEBURY GRAIN, LLC'S FINDINGS OF FACT AND CONCLUSIONS OF LAW; PROPOSED JUDGMENT

for $100,000.00—money loaned to VAC by Defendants.

16. Under the UVTA, a debtor is insolvent if "the sum of the debtor's debts is greater than the sum of the debtor's assets." Cal. Civ. Code § 3439.02(a). After the 2016 Transfers, Vicente Cortez had a balance of $1,000.00 in his savings account, $90.07 in his checking account and had divested himself of all of his assets apart from his residence. Apart from the actual asset-to-debt figures, Vicente Cortez is presumed insolvent by law because of his failure to pay his debt to Attebury as it became due. Cal. Civ. Code § 3439.02(b).

**C.     Conclusions of Law related to Remedies sought by Plaintiff**

17. A successful plaintiff may "recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less." Cal. Civ. Code § 3439.08(b)(1)(A)

18. A successful plaintiff may also "obtain [a]ny other relief the circumstances may require," Cal. Civ. Code § 3439.07(a)(3)(C), subject to limitations specified in the statute.

19. Under California law, "[i]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." Cal. Civ. Code § 3294(a).

20. In an action under the UVTA, a creditor may obtain avoidance of a transfers to the extent necessary to satisfy the creditor's claim. Cal. Civ. Code § 3439.07(a)(1).

21. Avoidance of the transfer of the Gratian Street Property to VAC is necessary to satisfy Attebury's judgment, in the 2015 Action, against Vicente Cortez.

22. In an action under the UVTA, a creditor may obtain a money judgment in the amount of the value of each asset fraudulently transferred at the

10

time of the transfer, Cal. Civ. Code § 3439.08(b)(1), and any other relief the circumstances may require, Cal. Civ. Code § 3439.07(a)(3)(C).

23. A judgment in the amount of the value of an asset fraudulently transferred may be entered against the "first transferee of the asset or the person for whose benefit the transfer was made" or an "immediate or mediate transferee of the first transferee" who did not in good faith take the asset for value. Cal. Civ. Code § 3439.08(b)(1)(A), (B).

24. The "first transferees," Cal. Civ. Code § 3439.08(b)(1)(A), of Vicente Cortez's April 19, 2016, transfers of $451,492.49 from his checking account were Juan Cortez ($200,000.00) and the marital community of Vicente and Juana Cortez ($251,492.49), respectively.

25. Under the UVTA's "[a]ny other relief the circumstances may require" language, Cal. Civ. Code § 3439.07(a)(3)(C), courts may, and have, imposed money judgments against fraudulent transferors and transferees, jointly and severally. *See, e.g.*, *McCalla v. E.C. Kenyon Constr. Co., Inc.*, 183 So. 3d 1192 Fla. 2016) (interpreting same language in Florida's UVTA).

26. "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant. Cal. Civ. Code § 3294.

27. California courts have awarded punitive damages on fraudulent transfer causes of action. *See, e.g.*, *Tassone v. Tovar*, 28 Cal. App. 4th 765, 767 (1994) (action for fraudulent transfer).

28. "The purpose of punitive damages is to punish wrongdoers and thereby deter the commission of wrongful acts." *Neal v. Farmers Ins. Exchange*, 21 Cal. 3d 910, 928 (1978).

29. "Punitive damages are to be assessed in an amount which, depending

upon the defendant's financial worth and other factors, will deter him and others from committing similar misdeeds. Because compensatory damages are designed to make the plaintiff 'whole,' punitive damages are a 'windfall' form of recovery." *College Hospital, Inc. v. Superior Court*, 8 Cal. 4th 704, 712 (1994) (internal citations omitted.)

30. The factors related to an appropriate amount of punitive damages include the particular nature of the defendant's acts in light of the whole record and the amount of compensatory damages awarded. *Neal*, 21 Cal. 3d at 928 (internal citations omitted.)

31. The compensatory damages in this matter are $451,492.49, as set forth below, in addition to the avoidance of the transfer of the Gratian Street Property to VAC.

32. The conduct of Vicente, Juana, and Juan Cortez (collectively "Defendants") is uncontroverted, and it clearly and convincingly meets the standard of Civil Code section 3294. On April 19, 2016, the day after this Court granted Plaintiff's motion for summary judgment in the 2015 Action, and in the days that followed, Defendants Vicente Cortez and Juana Cortez intentionally engaged in fraudulent conduct to cause injury and hardship to Attebury and are therefore guilty of oppression, fraud, and malice. The objective of Defendants Vicente Cortez and Juana Cortez, by their own admissions, was to defraud, hinder, and delay Attebury's attempts to enforce its judgment in the 2015 Action. This intent, alone and in combination with the recurring nature of Defendants' intra-familial conduct—this action is founded upon the 2015 Action for fraudulent transfers—is clear and convincing evidence warranting the imposition of punitive damages for the sake of example and by way of punishing the Defendants Vicente Cortez and Juana Cortez.

33. The uncontroverted evidence also establishes that Defendant Vicente Cortez owns or controls an entity and a revocable trust that, in turn, own multiple

1  residences, including the Vicente Cortez's own residence (owned by the marital

2  community of Vicente and Juana Cortez), as well as the residential investment

3  property on Gratian Street (owned by VAC), and the Garvey Ave. Property in El

4  Monte and the Whittier Blvd. Property in Pico Rivera, where La Mano Tortilleria

5  and La Fortuna Market, respectively, are located (owned by the Trust).

6          34.    The uncontroverted evidence also establishes that Defendant Vicente

7  Cortez, on the date of the April 19, 2016, fraudulent transfers alleged in the First

8  and Second Claims for Relief also had more than $450,000 on deposit in demand

9  accounts at Bank of the West.

10         35.    The Court finds that that double the amount of compensatory

11 damages, $902,984.98, is an appropriate measure of punitive damages in the

12 circumstances.

13 **D.    Conclusions of Law related to Pre- and Post-Judgment Interest**

14         36.    In diversity cases, state law controls the availability and amount of

15 pre-judgment interest. *James B. Lansing Sound, Inc. v. Nat'l Union Fire Ins. Co.*

16 *of Pittsburgh, Pa.*, 801 F.2d 1560, 1569 (9th Cir. 1986), amended 981 F.2d 1549

17 (9th Cir. 1992).  In order to recover pre-judgment interest under California law,

18 damages must have been calculable at the time.  Cal. Civ. Code § 3287 and § 3289.

19 In cases where interest is awarded on non-contractual claims, the rate is 7% per

20 annum from the date the claim arose.  Cal. Const. Art. XV § 1.

21         37.    The uncontroverted facts herein establish that Attebury's

22 compensatory damages claims against Vicente Cortez, Juana Cortez, and Juan

23 Cortez became liquidated on April 19, 2016, when Vicente Cortez transferred

24 $451,492.49 from his bank accounts at Bank of the West.  (To the extent

25 necessary, those transfers may be avoided to the extent necessary to satisfy

26 Attebury's claims.  Cal. Civ. Code § 3439.07(a)(1).)

27         38.    Plaintiff is entitled to prejudgment interest at the rate of 7% per

28 annum on its calculable damages of $451,492.49, recoverable as set forth below.

ATTEBURY GRAIN, LLC'S FINDINGS OF FACT AND CONCLUSIONS OF LAW; PROPOSED JUDGMENT

39.     With respect to post-judgment interest, in diversity cases, post-judgment interest is calculated under federal law.  Under 28 U.S.C. § 1962, "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  As of the week commencing November 20, 2017, the federal post-judgment interest rate was 1.61%.

# V.

# ORDER

Based on the foregoing Findings of Fact and Conclusions of Law, Judgment in favor of Plaintiff is appropriate, as follows.

1.     Against Defendants Vicente Cortez and Juan Cortez, jointly and severally, the amount of $200,000.00, plus prejudgment interest at the rate of 7% per annum (daily rate of $38.36) from April 19, 2016, until the date of this Judgment.  (As of November 28, 2017, the prejudgment interest since April 19, 2016, is $22,553.42.  When the prejudgment interest through November 28, 2017, is combined with the judgment amount, it sums to $222,553.42.)

2.     Against Defendants Vicente Cortez and Juana Cortez, jointly and severally, the amount of $251,492.49, plus prejudgment interest at the rate of 7% per annum (daily rate of $48.23) from April 19, 2016, until the date of this Judgment.  (As of November 28, 2017, the prejudgment interest since April 19, 2016, is $28,360.08.  When the prejudgment interest through November 28, 2017, is combined with the judgment amount, it sums to $279,852.57.)

3.     Against Defendant Vicente Cortez, the amount of $902,984.98 (actual amount of funds fraudulently transferred ($451,492.49) x 2), as exemplary damages, pursuant to California Civil Code § 3294(a).

4.     Plaintiff is also entitled to post-judgment interest at the rate of 1.61%, the weekly average one-year constant maturity Treasury yield, as published by the

Board of Governors of the Federal Reserve System, for the calendar week ending November 24, 2017.

      5.      The transfer of the Gratian Street Property to VAC is avoided to the extent necessary to satisfy Plaintiff's judgment, in the 2015 Action.

      6.      In addition to the foregoing Plaintiff may obtain:

      (1)      An attachment or other provisional remedy against the asset transferred or other property of a transferee.

      (2)      An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or other property of a transferee.

      (3)      Appointment of a receiver to take charge of the asset transferred or other property of a transferee.

      (4)      Execution on the assets transferred or their proceeds.

Cal. Civ. Code § 3439.07 (a)(1)-(3), (c).  If Plaintiff requires any of the foregoing remedies, it shall apply separately to this Court.

      7.      Plaintiff is entitled to its costs of suit and is directed to submit a bill of costs.


**IT IS SO ORDERED.**


Dated:  December 13, 2017

THE HONORABLE MANUEL L. REAL
UNITED STATES DISTRICT JUDGE


      Respectfully submitted:

By:  /s/ Joseph N. Akrotirianakis
JOSEPH N. AKROTIRIANAKIS
KING & SPALDING LLP

Attorneys for Plaintiff
ATTEBURY GRAIN. LLC